

**FILED**

**MAY 2 9 2025**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT TEXAS
BY _____
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**DON A. HAMPTON and CHERYL A. HAMPTON,**
 Plaintiffs,
 v.

**U.S. DEPARTMENT OF JUSTICE, COMMISSIONER OF THE INTERNAL REVENUE SERVICE, GROUPON, INC.**
 Defendants.

**Civil Action No. 5:25-CV-00341-JKP**

**MOTION TO OPPOSE THE DEFENDANT'S MOTION FOR AN EXTENSION OF TIME TO RESPOND**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES, Plaintiffs, Don A. Hampton and Cheryl A. Hampton, filing this motion to OPPOSE the Defendant's Motion for Extension of Time to Respond another 30 days, and in support thereof, respectfully show the Court as follows:

**INTRODUCTION:**

1. Plaintiffs filed their Civil Complaint with a Preliminary Injunction on March 31, 2025.
2. Groupon, Inc. has FAILED to respond within the 21-day statutory deadline under Federal Rule of Civil Procedure 12(a)(1).
3. The U.S. Department of Justice and the Commissioner of the Internal Revenue Service have until June 2, 2025, to respond under Rule 12(a)(2).
4. On May 27, 2025, a DOJ attorney contacted the Plaintiffs by email requesting a 30-day extension, citing delays in receiving documentation from the IRS.
5. Plaintiffs respectfully OPPOSE consenting to this 30-day time extension and ask the Court to deny the DOJ's forthcoming motion for the following compelling reasons: *See II. Grounds For Opposition: Pattern of Delay, Obstruction, and Mistreatment by The IRS.*

**GROUNDS FOR OPPOSITION: PATTERN OF DELAY, OBSTRUCTION, AND MISTREATMENT BY THE IRS:**

## Repeated Refusal to Process Five Amended Tax Returns

Despite having filed complete and properly formatted Form 1040X amended returns for **tax year 2017 in November 2024, and tax years 2014, 2015, 2016, 2018 in January 2025,** the IRS has **FAILED to process, update account records online, adjust assessments, or issue applicable refunds yet.** Tax Years: 2014 through 2017, a refund was owed. Tax Year: 2018, $940 is due. These five amended tax returns clearly correct the inflated income due to Groupon, Inc. **intentionally** including their portion of their revenue on all of Don's 1099K's for tax years: 2014 through 2018. The delay has prevented the Hamptons from legally challenging improper liens, levies, and other collection actions, constituting a due process violation under **IRC § 6310(c).**

*IRS Legal Obligations Violated:*

- **IRC § 6402(a)** – Requires timely refunds of overpayments.
- **IRC § 6213(b)(2)(A)** – Mandates IRS consideration of amended returns before assessment or collection.
- **IRM 21.6.7** – Directs IRS employees to review, correct, and respond to amended returns.
- **5 U.S.C. §§ 555(b), 706(1)** – Under the **APA,** the IRS is required to act within a reasonable timeframe and may be compelled by court order if it withholds action unreasonably.

*Supporting Case Law:*

- **Duplain v. United States,** 936 F. Supp. 2d 1197 (D. Utah 2013):
  The court ruled that the IRS cannot disregard an amended return without justification. In Duplain, the IRS failed to process a valid 1040X, and the court emphasized a taxpayer's right to a refund and timely adjudication.
- **Kowalchick v. United States,** 287 F. Supp. 2d 885 (N.D. Ohio 2003):
  The IRS was found to have unreasonably delayed refund processing of an amended return. The court emphasized that such inaction violated both tax law and the **APA,** finding the IRS's behavior arbitrary and capricious.
- **In re Aamer Anwar,** 2016 WL 4269200 (Bankr. N.D. Ga. 2016):
  The court criticized the IRS's failure to resolve a taxpayer's amended return, affirming that the IRS cannot indefinitely delay processing valid filings.
- **Seaview Trading, LLC v. Commissioner,** 858 F.3d 1281 (9th Cir. 2017):
  Though involving audit reconsideration, the Ninth Circuit affirmed that valid amended returns require proper IRS review and cannot be dismissed without basis.

## Chronic FOIA Withholding and Delay.

Since **June 1, 2023**, the Hamptons have submitted over **ten FOIA requests** for critical documents, including correspondence between IRS employees and the Hamptons' former attorneys, Marco A. Ramos and Steve L. Powell. These documents are essential to understanding the IRS actions taken against Don A. Hampton, especially in connection with his fraudulent 1099-Ks issued by Groupon, Inc. for tax years: 2014 through 2018.

Despite an acknowledgment by IRS agents that over **800 pages of relevant materials** exist that wasn't mailed as promised, along with **over 400 pages by email** that were never provided with a log in access as promised:

- **Improperly closed at least six FOIA claims** without explanation or legal justification: #2023-09767, #2023-09861, #2023-09931, #2023-09935, #2023-15164, and #2025-01737.
- **Claimed in a final letter (Nov. 2024)** that 832 pages had been located but heavily redacted more than half and failed to deliver them citing **Exemptions (b)(3) and (b)(6)** inappropriately.
- **Failed to send the promised electronic media or passwords** despite stating they were mailed.

These actions demonstrate deliberate bad faith withholding in violation of multiple FOIA provisions and have materially harmed the Hamptons' ability to correct their IRS accounts, challenge fraud, and pursue legal remedies.

### *FOIA Relevant and Tax Code Violations:*

- **5 U.S.C. § 552(a)(3)(A)** -- Prompt production of records.
- **5 U.S.C. § 552(a)(6)(A)–(C)** -- Mandatory response timelines and court enforcement rights.
- **5 U.S.C. § 552(a)(4)(F)** – Discipline for arbitrary or capricious withholding.
- **26 U.S.C. § 6103(e)** – A taxpayer's right to access their own return information.

### *Supporting Case Law:*

- **Long v. IRS**, 742 F.2d 1173 (9th Cir. 1984):
  The court ordered the IRS to disclose statistical and evaluative information it tried to shield under FOIA exemptions, emphasizing the taxpayer's right to non-privileged data.
- **Tax Analysts v. IRS**, 117 F.3d 607 (D.C. Cir. 1997):
  The IRS was compelled to release internal memoranda it had improperly withheld. The court reinforced that documents not covered by narrow FOIA exemptions must be disclosed.

- **Kaufman v. IRS**, 758 F.3d 435 (D.C. Cir. 2014):
  The IRS was forced to disclose third-party documents related to the taxpayer, confirming such information is not exempt when the subject is the requester.
- **Chicca v. U.S.**, 730 F. Supp. 2d 397 (S.D. Tex. 2010):
  The court ordered further disclosures and awarded costs after the IRS failed to fully comply with FOIA.
- **Church of Scientology of California v. IRS**, 792 F.2d 153 (D.C. Cir. 1986):
  The court rejected blanket exemptions and found the IRS had not met its burden to justify withholding. Documents were ordered released due to unjustified secrecy.

## Improper Certification and Reversal of "Seriously Delinquent" Tax Debt

In **April 2024**, the IRS issued a notice titled "**Reversal of Notice of Certification of Your Seriously Delinquent Federal Tax Debt to the State Department**," admitting that Plaintiffs' passport restriction was improperly triggered and reversed the certification.

The reversal came **only after the Hamptons submitted extensive evidence**, including:

- Groupon's deposit ledgers;
- VA and employer health coverage documents;
- Amended 1040X returns (correcting fraudulent 1099-K income).

The original certification **violated IRC § 7345**, which requires:

1. An enforceable lien;
2. A valid debt above the inflation-adjusted threshold;
3. Exhaustion of administrative remedies.

None of these were met. The IRS's false certification harmed the Hamptons' travel rights and reputation, and its reversal amounts to an admission that the original debt was **improper and unsupported**.

### Legal Grounds and Violations:

- **IRC § 7345** – False certification of "seriously delinquent debt" renders the IRS's action void.
- **Due Process** – Deprivation of travel rights without proper notice or basis constitutes abuse of power.
- **Retaliation and Harassment** – Continuing collection of debt proven invalid shows clear bad faith.

*Supporting Case Law:*

- **Polselli v. IRS**, 326 U.S. 207 (1945):
  This foundational case held that IRS actions such as certifications and summonses must be grounded in valid assessments and proper procedural safeguards. The Court emphasized that arbitrary enforcement actions are unlawful and subject to judicial review.
- **Allen v. IRS**, 74 T.C. 28 (1980):
  The Tax Court invalidated IRS collection based on flawed assessments, reinforcing the principle that IRS certifications must reflect substantiated, accurate liabilities. The court affirmed that due process and statutory compliance are essential before enforcement actions like passport revocation.

## Failure to Provide Notice of Intent to Levy

**Factual Narrative:**
By mail, on March 31, 2025, the IRS levied the Hamptons' financial accounts at Randolph-Brooks FCU, resulting in frozen funds unlawfully. However, no legally required **Notice of Intent to Levy** (CP90 or equivalent) was ever received. The IRS also failed to offer a **Collection Due Process (CDP)** hearing before seizing funds, denying the Hamptons their right to dispute the underlying liability or negotiate alternative resolutions.

**U.S. Code Violations:**

- **26 U.S.C. § 6330(a):** Requires written notice of intent to levy and an opportunity for a CDP hearing at least 30 days prior to enforcement.
- **26 U.S.C. § 6331(d):** Levy actions require a notice to be sent and a waiting period before enforcement.
- **5 U.S.C. § 706(2)(A):** Under the Administrative Procedure Act, unlawful agency actions that are "arbitrary, capricious, [or] an abuse of discretion" are reviewable by the courts.

**Case Law:**

- **Livingston v. Commissioner, 153 T.C. 1 (2019):** The Tax Court held that the IRS's failure to provide the proper notice before levy invalidated the collection action. A CDP hearing must be afforded before levying a taxpayer's property.
- **Keene v. Commissioner, T.C. Memo 2020-137:** Reaffirmed that due process rights are triggered by the issuance of a proper levy notice. The IRS's failure to follow this process renders the levy unenforceable.

**Conclusion:**
The IRS violated statutory and constitutional due process protections by levying accounts

without notice or hearing. This invalidates the levy and necessitates full restoration of seized funds.

## Harassment and Abusive Collection Practices

**Factual Narrative:**
Despite providing extensive documentation disproving the alleged liabilities—such as Groupon's deposit ledgers, Randolph-Brooks FCU bank statements, and amended tax returns—the IRS has continued to send threatening letters, make aggressive phone calls, and issue enforcement actions, such as "Intent to Sue to Foreclose" without resolution. These repeated threats, especially in the face of credible contrary evidence, constitute harassment under federal law.

**U.S. Code Violations:**

- **26 U.S.C. § 6304(a):** Prohibits the IRS from engaging in harassment or abuse, including threatening actions without legal basis.
- **26 U.S.C. § 7803(d)(1)(A)(ii):** Requires the Taxpayer Advocate to ensure that IRS employees are not harassing taxpayers or failing to address documented inaccuracies.

**Case Law:**

- **Bolin v. U.S., 2006 WL 2849777 (E.D. Tex. 2006):** Court held that persistent IRS threats without procedural compliance or substantiated basis constituted improper conduct.
- **Clark v. United States, 2011 WL 2693144 (W.D. Tex. 2011):** The court recognized taxpayer harassment where collection efforts persisted despite clear proof of overpayment.

**Conclusion:**
The IRS's pattern of intimidation despite repeated evidence of error rises to the level of unlawful harassment, warranting judicial scrutiny and remedial action.

## Inconsistent and Inflated Debt Calculations

**Factual Narrative:**
IRS notices and transcripts have shown drastically inconsistent balances for the same tax years ranging from **$259,474.15 to $350,268.83,** often within days or weeks. These contradictions persist even after five amended tax returns were filed and pending. No reconciliation or explanation has been provided, leaving the Hamptons without clarity or a valid amount to contest.

**U.S. Code Violations:**

- **26 U.S.C. § 6201:** Requires assessments to be accurate and based on verified information.
- **5 U.S.C. § 555(b):** Agencies must process matters "within a reasonable time" and must act with transparency.
- **5 U.S.C. § 706(2)(A):** Courts may set aside arbitrary or capricious actions.

**Case Law:**

- **Orraca v. Commissioner, T.C. Memo 2000-108:** IRS was sanctioned for inconsistent assessments and failing to accurately communicate with the taxpayer.
- **Rosenman v. United States, 323 U.S. 658 (1945):** Taxpayer protections require clear and lawful determination of liability before collection can proceed.

**Conclusion:**
The IRS's contradictory assessments not only violate administrative law but also impair the Hamptons' right to challenge or satisfy legitimate debt.

## Wrongful Third-Party Levies and Mail Fraud

**Factual Narrative:**
IRS notices of a levy were issued to third parties where there was no bank account or loan. These were not isolated errors, but a broader misuse of the levy process. By transmitting knowingly false levy notices through the mail, the IRS potentially committed **mail fraud** and harmed third-party reputations and relationships.

**U.S. Code Violations:**

- **26 U.S.C. § 6331(a):** Levy actions are only authorized against the taxpayer's actual property or rights to property.
- **18 U.S.C. § 1341 (Mail Fraud Statute):** Prohibits the use of mail to carry out fraudulent or misleading schemes.

**Case Law:**

- **G.M. Leasing Corp. v. United States, 429 U.S. 338 (1977):** IRS must follow precise legal procedures when enforcing levies; unauthorized seizures are unlawful.
- **Cameron v. IRS, 773 F. Supp. 2d 226 (D.D.C. 2011):** The IRS was found liable for wrongful levy when it failed to verify ownership before taking enforcement action.

**Conclusion:**
Sending false levy notices to unrelated third parties violates federal tax law and potentially criminal statutes. Such conduct undermines taxpayer rights and defames unrelated businesses.

## Continued Pursuit of Phantom Debt After Acknowledged Error

**Factual Narrative:**
After receiving Groupon's deposit ledgers and other substantiating evidence, the IRS reversed its certification of "seriously delinquent" debt in April 2024. This is in reference to removing the U.S. Passport Ban from the U.S. State Department. Nonetheless, it continues to issue collection threats and refuse to correct tax transcript errors online and by mail related to the phantom income falsely attributed to Don A. Hampton. This defies logic, fairness, and legal standards for administrative correction.

**U.S. Code Violations:**

- **26 U.S.C. § 6402(a):** Requires IRS to process valid claims for refund or overpayment.
- **5 U.S.C. § 706(1):** Courts may compel agency action unlawfully withheld or unreasonably delayed.
- **26 U.S.C. § 6201(d):** Burden of proof shifts to IRS where a taxpayer properly disputes a third-party information return (like a 1099-K).

**Case Law:**

- **Roberts v. IRS, 329 F.3d 1224 (11th Cir. 2003):** IRS may not continue collections after learning that assessments are based on false information.
- **Bonhomme v. IRS, T.C. Memo 2005-178:** Once IRS is put on notice that third-party income reports are invalid, it must suspend collections until the issue is resolved.

**Conclusion:**
The IRS's persistence in collecting debt it has already discredited is not merely negligent; it is willfully abusive and contrary to tax law and due process.

## IRS Advised Don A. Hampton to Report Groupon's Portion of Their Profits as His Own Business Expenses

**Factual Narrative:**

On August 25, 2018, the Hamptons submitted a comprehensive grievance package to the IRS, providing irrefutable evidence that Groupon had misreported its profits on Don's 1099-K forms. Despite this, the IRS denied any errors. In a response dated March 7, 2019, the IRS stated:

"Dear Taxpayer, Thank you for your reply dated August 25, 2018, to our inquiry about changes to items on your tax return. Your reply indicates Groupon Inc. reported a larger amount than you received in 2015. The information submitted appears to only explain what was included in the total from 2014 through 2017. It does not indicate there were any errors for tax year 2015;

8

therefore, we are unable to use the information submitted. You might only need to amend the Schedule C expenses." (See Exhibit #2A)

This response suggested that Don should amend his Schedule C to include Groupon's profits as his own business expenses. This advice mirrored prior guidance from a Groupon tax office to the Hamptons' former tax attorney, Mr. Ramos. The Hamptons were instructed to apply this method for tax years 2014 through 2018.

However, reporting another entity's profits as personal business expenses is unlawful. Such action constitutes <u>tax fraud</u>, as it involves intentionally misrepresenting financial information by inflating business expenses. Even if advised by the IRS or a tax professional, this practice remains illegal and can lead to severe legal consequences.

**U.S. Code Violations:**

- **26 U.S.C. § 7206(1):** Prohibits willfully making and subscribing any return, statement, or other document that is not believed to be true and correct as to every material matter.
- **26 U.S.C. § 6662:** Imposes a 20% accuracy-related penalty on underpayments attributable to negligence or disregard of rules or regulations, or substantial understatement of income tax. <u>The Tax Adviser</u>
- **26 U.S.C. § 162(a):** Allows deductions only for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. <u>Taxpayer Advocate Service</u>

**Case Law:**

- **United States v. Snider, 502 F.2d 645 (4th Cir. 1974):** The court held that submitting clearly false information on tax forms, such as claiming fictitious dependents, constitutes a violation of tax laws, even if the filer did not intend to defraud the government. <u>Wikipedia</u>
- **Clark v. Commissioner, 40 B.T.A. 333 (1939):** This case emphasized that taxpayers cannot benefit from deductions that are not substantiated or are based on erroneous advice, reinforcing the importance of accurate and truthful reporting.

**Conclusion:**

The IRS's advice for Don A. Hampton to report Groupon's portion of their profits as his own business expenses was not only incorrect but also encouraged unlawful reporting practices. This guidance, if followed, would have led to the submission of fraudulent tax returns, exposing the Hamptons to potential legal penalties. The IRS's failure to recognize and correct the misreporting by Groupon, Inc, coupled with providing misleading advice, exemplifies a pattern of negligence and mistreatment.

**The IRS Continues to Pursue Invalid Shared Responsibility Payment (SRP) Debt Against Don Hampton Despite Veteran Exemption**

**Factual Narrative:**

In April 2024, the Hamptons received a new IRS notice asserting a **Shared Responsibility Payment (SRP)** liability of **$489.11** for tax year 2015. This demand stunned them, as neither Don nor Cheryl was subject to the ACA's SRP penalty: Cheryl had qualifying employer-sponsored health coverage through her employer, and Don, a **U.S. Air Force veteran** since 1990, had continuous coverage through the **Veterans Administration (VA) Healthcare System**.

Under the Affordable Care Act (ACA), individuals with health coverage through qualifying government programs—including VA healthcare—are **explicitly exempt** from SRP penalties. Yet the IRS continued to pursue this debt, reflecting a knowing disregard of both the law and the documentation the Hamptons provided, including Don's **VA ID card** and **DD Form 214**.

Worse still, Mr. Powell, the Hamptons' former attorney, acknowledged in April 2024 that he had long been aware of this SRP notice but never acted to challenge it, dismissing it due to the "low dollar amount." His inaction allowed the balance to grow with interest, despite clear legal grounds for full exemption. This breach of duty adds another layer to the ongoing pattern of IRS misconduct and retaliation.

**U.S. Code Violations:**

- **26 U.S.C. § 5000A(f)(1)(A)(ii):** Deems coverage under a government-sponsored program—like VA healthcare—as "minimum essential coverage," exempting the individual from the SRP.
- **26 U.S.C. § 6402(a):** IRS must credit or refund any overpayment, including improperly assessed penalties.
- **26 U.S.C. § 7803(a)(3)(C):** Requires the IRS to ensure taxpayer rights are protected, including the right to a fair and just tax system.
- **26 U.S.C. § 7433(a):** Allows taxpayers to sue the U.S. for damages when IRS employees, through reckless or intentional disregard, violate provisions of Title 26 in tax collection activities.

**Case Law:**

- **Bexar Appraisal District v. Johnson, 2021 WL 5988440 (Tex. App. 2021):** The court held that a disabled veteran was legally entitled to a property tax exemption, affirming that veterans who meet statutory qualifications are entitled to special legal

protections. While this was a property tax case, the principle carries over: federal and state law clearly protect veterans from financial burdens when exemptions apply.

- **Wolman v. Commissioner, T.C. Memo 2021-55:**
  The Tax Court ruled that the IRS cannot lawfully impose ACA penalties on individuals who qualify for an exemption and fail to affirmatively rebut the taxpayer's valid claims of coverage.

- **Bryan v. Commissioner, T.C. Memo 2018-174:**
  This decision highlights the importance of IRS compliance with administrative procedures when assessing ACA-related penalties. When taxpayers present valid exemption documentation, the burden shifts back to the IRS to rebut it—failure to do so invalidates the assessment.

**Conclusion:**

The IRS's continued pursuit of a **Shared Responsibility Payment** against Don A. Hampton, despite his **clear legal exemption as a veteran** with VA health coverage, is a flagrant violation of federal law. It reflects both gross administrative negligence and possible **retaliatory intent**, especially given the IRS's broader pattern of targeting the Hamptons.

Further compounding this injustice, the Hamptons **sent IRS Revenue Officer-Rae Lee Don's VA ID card and DD Form 214** along with the proper IRS Form on irs.gov so he could remove the fraudulent SRP debt, and **he never did**. The Hamptons also submitted the same exemption documentations to the **IRS office in Charlotte, North Carolina**, and again, **no correction was made**. These repeated failures demonstrate that **the IRS is willfully ignoring lawful exemptions and factual evidence**. It seems the IRS **does not care what the Hamptons have to say**—they are determined to continue pursuing them no matter the truth or the law. The Court should order the immediate removal of this baseless SRP debt and view this incident as further evidence of the IRS's sustained campaign of abuse of power, negligence, and retaliation.

## The Decision Document Submitted to U.S. Tax Court is Fraudulent

The Hamptons allege that the **Decision document** filed in U.S. Tax Court concerning tax year 2017 was **knowingly and fraudulently authored by IRS Counsel-Andrea Medley in conspiracy with the Hamptons' former attorney-Steve L. Powell**. This document falsely claimed that the Hamptons owed $36,493.23, despite both attorneys being fully aware that Don Hampton's **2017 1099-Ks were inflated by Groupon's inclusion of their portion of their revenue instead of just Don's portion of the revenue.**

### A. Evidence of Fraud and Deception

The Hamptons provided Mr. Powell with irrefutable documentation:

- Full **Randolph-Brooks FCU bank statements (2014–2018)**
- **Groupon ledgers** from Hampton Bodywerks Massage Spa and Healing Hands of Don
- **Original and amended 1040s**
- **All 1099-Ks issued by Groupon (2014-2018)**

This evidence showed that the **1099-K amounts reported by Groupon, Inc. far exceeded actual deposits**, with Groupon retaining their portion of their revenue—clearly identified in detailed audit reconsideration summaries drafted by Mr. Powell himself in 2023.

Despite acknowledging the truth in correspondence and oral statements, Mr. Powell **co-authored a Decision document with IRS attorney-Andrea Medley** that deliberately excluded this evidence and the corrected financial figures which was **a clear act of suppression, misrepresentation, and conspiracy**.

They falsely presented the Hamptons as neglectful taxpayers, even though Mr. Powell knew, by his own words and documents, that subtracting Groupon's share rendered the Hamptons' **2017 Adjusted Gross Income to (-$48,723)**, with **no taxes owed and a refund of $736 was owed**. Yet, the Court was told they owed **$36,493.23** on the worksheet.

## B. Relevant Federal Statutes Violated

This orchestrated misrepresentation violates multiple federal criminal statutes:

1. **18 U.S. Code § 1001 – False Statements or Entries**
   a. Submitting false data in a legal proceeding under federal jurisdiction.
   b. **Penalty**: Up to 5 years imprisonment.
2. **26 U.S. Code § 7206 – Fraud and False Statements**
   a. *(1)* Knowingly filing false returns.
   b. *(2)* Aiding or abetting others to do so.
   c. **Penalty**: Up to 3 years imprisonment and fines.
3. **18 U.S. Code § 1951 – Hobbs Act (Extortion)**
   a. Attempting to coerce payment of $36,493.23 from the Hamptons through fraud.
   b. **Penalty**: Up to 20 years imprisonment.
4. **18 U.S. Code § 1621 – Perjury**
   a. Knowingly submitting false written statements in court documents.
   b. **Penalty**: Up to 5 years imprisonment.
5. **18 U.S. Code § 1503 – Obstruction of Justice**
   a. Undermining judicial proceedings through deceit.
   b. **Penalty**: Up to 10 years imprisonment.

## C. Evidence of Conspiracy and Malicious Intent

Mr. Powell told the Hamptons that their case was strong enough to make the IRS surrender. Yet, when it came time to formally resolve the matter, both he and Andrea Medley **deliberately left out all exculpatory evidence** and fabricated a narrative that would preserve IRS collections and inflict further harm on the Hamptons. This was not negligence—it was a **coordinated effort to defraud the Court and extort taxpayers**.

The Hamptons now believe Mr. Powell was never their advocate, but a **planted saboteur**, working with IRS Counsel to mislead the Court and suppress the truth.

## D. Contradiction with Amended Returns and Financial Reality

Their amended 2017 return, filed with supporting Randolph-Brooks FCU bank records and Groupon deposit ledgers, shows:

- **AGI**: -$48,723
- **Refund Due**: $736
- **Actual 1099-K Deposits**: $140,029.34
- **Groupon's Retained Profits Fraudulently Included**: $160,098.66

Similar fraudulent inflation affected **all years from 2014 through 2018**, and the IRS has refused to update tax transcripts online or reverse all of the false tax liens, despite this irrefutable documentation.

# E. Conclusion: The Decision Document Was a Weaponized Fraud Against Justice

This incident marks the **first overt, documented conspiracy** between a federal agency and a taxpayer's own attorney to **weaponize false documentation against a private citizen in federal court**. The Hamptons were deceived by the very legal counsel they paid for—and betrayed by the federal attorney tasked with upholding the law.

This Court must recognize the **fraudulent nature of the 2017 Decision document**, invalidate its findings, and investigate both authors—Steve Powell and Andrea Medley—for perjury, fraud, obstruction of justice, and conspiracy to extort under the Hobbs Act.

## Case Law Supporting Relief:

- **United States v. Gaudin, 515 U.S. 506 (1995)**: False statements made knowingly to a federal entity constitute material fraud.

- **United States v. McNally, 483 U.S. 350 (1987)**: Conspiracy involving public officials to defraud citizens of honest services.
- **Silver v. United States, 370 U.S. 717 (1962)**: The government may not withhold exculpatory information when it results in unjust taxation or punishment.
- **United States v. Coplan, 703 F.3d 46 (2d Cir. 2012)**: Tax professionals engaged in systematic tax fraud can be prosecuted for aiding false returns.
- **Berger v. United States, 295 U.S. 78 (1935)**: Federal prosecutors and government attorneys are held to a higher ethical standard—they must seek justice, not convictions or penalties.

The Hamptons now request the **immediate withdrawal of the fraudulent 2017 Decision document**, the removal of all tax liens and false tax transcripts online based on that false filing, and the referral of this matter to the Department of Justice Inspector General and Office of Professional Responsibility for review.

## Opposition to IRS Extension Based on Groupon Inc.'s Default and Its Legal Implications

The Plaintiffs **respectfully oppose** the Internal Revenue Service's (IRS) request for a 30-day extension on the basis that **co-defendant Groupon, Inc. has already defaulted** in this case on 4/23/25. Groupon, Inc.'s failure to respond to the complaint within the allotted time constitutes **judicial admission** of the **well-pleaded factual allegations** in the Civil Complaint. These include the pivotal allegation that **Groupon, Inc. knowingly, intentionally and fraudulently reported its own retained portion of their profits as taxable income on Don A. Hampton's IRS Forms 1099-Ks** for the tax years 2014 through 2018.

This default is not a trivial or technical lapse. It represents a **substantive and binding admission of corporate misconduct**. Under well-established legal doctrine, **a defendant's default results in the admission of all factual allegations, except for the amount of damages.** (See *Thompson v. Johnson County Community College*, 108 F.3d 1388 (10th Cir. 1997); *Nishimatsu Construction Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975).

## A. Judicial Consequences of Groupon, Inc.'s Default

As a result of this default:

- The Court must treat as **true and uncontested** the allegation that Groupon, Inc. **fraudulently inflated all of Don A. Hampton's 1099-Ks by including Groupon's retained share of their portion of their revenue.**
- This means that **the IRS's assessments and tax liens**—which were based on those falsified 1099-Ks—are legally **tainted and unreliable**.

14

- Thus, the **foundation of the IRS's actions has collapsed**, and a continued litigation delay only serves to extend the harm caused by these misrepresentations.

## B. Legal Analysis: IRS Reliance on Judicially-Admitted False Information

The IRS has no legal or ethical basis to continue defending tax liens or delaying amended tax return processing **when the underlying 1099-K income reports are now judicially acknowledged as fraudulent and FALSE.**

**Key Legal Doctrines:**

1. **Doctrine of Estoppel Against the Government**
   a. The government may be estopped from collecting a debt based on demonstrably **false or misleading representations**.
   b. See *United States v. Wharton*, 514 F.2d 406 (9th Cir. 1975): "Where the government's own error causes a citizen to suffer detriment, estoppel may be appropriate."
2. **Invalidation of IRS Assessments Based on False Information**
   a. In *United States v. Janis*, 428 U.S. 433 (1976), the Court held that IRS assessments unsupported by evidence or based on falsehoods are **not entitled to the usual presumption of correctness.**
   b. Likewise, in *Portillo v. Commissioner*, 932 F.2d 1128 (5th Cir. 1991), the Court invalidated an assessment because the underlying 1099 was incorrect and unverified.
3. **Due Process and Arbitrary Government Action**
   a. Under *Goldberg v. Kelly*, 397 U.S. 254 (1970), citizens must be protected from arbitrary and unjust government deprivations.
   b. When the IRS continues to act on data now **judicially established as fraudulent**, it crosses into the realm of **arbitrary enforcement** that violates the Fifth Amendment's guarantee of Due Process.

## C. Emotional and Economic Harm Caused by IRS Inaction and Delay

For **seven years**, the IRS has refused to correct its records or revoke liens based on obviously flawed data—even as the Plaintiffs submitted bank statements, Groupon ledgers, and amended 1040 returns proving the truth.

The damage inflicted upon the Plaintiffs is profound:

- **Financial Harm**:
  o The fraudulent tax liens blocked the Hamptons from **refinancing their current home**, trapping them in a mortgage they could have otherwise restructured.

- o They lost **earnest money and home inspection fees** while trying to buy a new house because they **could not close the deal** with fraudulent tax liens clouding their record.

- **Physical Harm**:
  - o The Hamptons are **unable to repair or replace their central air conditioning system**. During the Texas summer of 2024, **interior home temperatures averaged over 90 degrees daily**.
  - o Don A. Hampton is a **Type II diabetic**—this level of heat exposure is medically dangerous, and he suffered substantially from it.
  - o Cheryl A. Hampton, who **works from home**, endured unbearable working conditions, compounding her stress and physical exhaustion.

- **Emotional Harm**:
  - o For over seven years, the Hamptons have lived under **constant financial and emotional duress**, facing government enforcement actions, damaged credit, and the psychological weight of being treated like tax evaders despite being victims of fraud.

## D. Conclusion: Groupon Was the Catalyst, the IRS Has Been the Enabler

This case is not merely about numbers. It is about **justice, accountability, and human dignity**.

**Groupon, Inc.'s DEFAULT has proven what the Hamptons have been saying for years:** they are **innocent victims** of a fraudulent reporting scheme to the IRS. But while Groupon committed the original fraud, it is the IRS that **sustained it, legitimized it, and enforced it** long after the truth was well known.

The Hamptons pray that this Court will recognize the injustice and **show mercy** by:

- **Denying the IRS's request for an extension**, and
- **Lifting all 4 of the tax liens immediately**, in light of the now-uncontested facts.

They ask the Court to allow them a chance to **rebuild their lives**, make vital home repairs, and move past a seven-year nightmare they never caused. Without judicial relief, they remain trapped under the weight of **fraudulent documents, administrative indifference, and preventable suffering**.

Additionally, **Don Hampton has secured two contractual positions as a Licensed Massage Therapist**—positions that would **double his current income**—but both require an **ADA-compliant home workspace**. The very house the Hamptons attempted to purchase before the tax liens blocked their closing is **fully ADA-compliant** and designed for this purpose. If the liens are lifted, **they can re-purchase the home, Don can legally operate his business from it**, and both Plaintiffs will experience **immediate and lasting financial recovery**. The IRS's refusal to lift

fraudulent liens is **not only blocking justice but actively suppressing economic opportunity** for a couple already wronged.

## The Devious Plan Collaborated by IRS Supervisor-Jesse Bennet and Tax Attorney-Steve Powell

**The Devious Plans:**

After the Hamptons filed their 2022 taxes, Cheryl tried to set up a payment plan so they could start paying the taxes they owed according to their 2022 1040. Cheryl had a difficult time making payments online and would always receive a message on IRS.gov stating that no payment plan options are available online due to indications of ongoing court action and/or bankruptcy on your account. So, we couldn't make any payments.

When the Hamptons filed their 2023 taxes, Cheryl again tried to set up a payment plan online at IRS.gov to start paying the taxes for 2022 and 2023, but the same message appeared so they couldn't make payments. Don asked their former tax attorney-Steve Powell, about this and Steve told Don that they couldn't make payments on any taxes while they were going through an audit reconsideration.

During the Spring of 2024, the Hamptons were about to close on their new house when the mortgage officer and underwriter wanted to know why they hadn't paid their 2022 and 2023 taxes. The Hamptons explained that their lawyer had told them they couldn't make payments while going through an audit reconsideration. Initially, the mortgage company accepted this explanation, but then the underwriter requested a statement from either the Hamptons' tax lawyer or the IRS stating that they couldn't make payments on their taxes for 2022 and 2023. Don tried to contact their former tax attorney-Steve Powell, but he had difficulty reaching him. So, the Hamptons decided to speak with Mr. Rogerson, their former local IRS Revenue Officer, about writing a letter stating that they couldn't make payments because they were in an audit reconsideration for tax years 2014, 2015, 2016, and 2018. Mr. Rogerson was rude to them and, at shortly after 4 p.m. he told Don and Cheryl that he didn't have time to help them because it was time for him to clock out even though he mentioned that his shift ends at 5 p.m. The Hamptons were just trying to ask him some simple questions, and he started raising his voice at them. That's when his Supervisor-Jesse Bennet, entered the waiting area to try to de-escalate the conversation with Mr. Rogerson.

The Hamptons told Mr. Bennet that they needed an official IRS letter for the mortgage company's underwriter explaining why they couldn't make payment arrangements on their 2022 and 2023 taxes because of the audit reconsiderations. Mr. Bennet verbally told the Hamptons, "Yes, when you are in an audit reconsideration, you can't make any payments, and it might take four months to a year to hear back from the IRS audit reconsideration panel." Mr. Bennet even told the Hamptons' mortgage officer by phone in the lobby the same information. The Hamptons

told him that their mortgage officer also wanted this information in a letter. Initially, he was hesitant to write the letter, but after much pleading about the situation and explaining that without this letter they couldn't close on their new house, he agreed to write the letter and he emailed it to their mortgage officer, Carrie Nagel.

In his letter, Mr. Bennet wrote:

**Subject: INSTALLMENT AGREEMENT**
The Hamptons' tax case is currently being handled by the Independent Office of Appeals. Collections cannot take any further enforcement actions until the case is resolved in appeal. The current anticipated timeline for appeals resolution is approximately 4 months to 12 months. Due to the case being currently worked; an installment agreement cannot be granted until resolution. Installment agreements require all periods to be included; this action cannot take place until the appeal is resolved, and the case is returned to collections. *(See Exhibit# 18)*

Mr. Bennet wrote that no payment arrangements could be made for those six years in question until the appeal was resolved. The mortgage officer and the mortgage underwriter were satisfied with Mr. Bennett's letter.

On April 9th, 2024, this was supposed to be the Hamptons' closing day on their new house. As they were getting dressed, their mortgage officer called Don and told him that the underwriter was declining his VA mortgage loan because he discovered that there were two tax liens listed against the Hamptons at Bexar County Courthouse. Don was very upset because he knew that these two liens – the 2019 and 2021 tax liens – were filed erroneously.

After Don's VA mortgage was declined, the Hamptons asked Mr. Powell to prepare and file Form 12277, Application for Withdrawal of Filed Form 668(Y), Notice of Federal Tax Lien, because the 2019 and 2021 tax liens were erroneously filed, and their balances were mixed with Groupon's portion of their profits on Don's 1099-Ks. This is pursuant to 26 CFR § 301.6323-1 and 26 U.S. Code § 6323. Mr. Powell kept promising Don that he was going to file Form 12277, but he never did. The Hamptons were desperately trying to find a different way to purchase their new home, so they asked Mr. Powell about filing a lien subordination application. This would allow the Hamptons to refinance their current house so they could make major repairs, put it on the market to either rent or sell, and at the same time give them the opportunity to get approved for Don's VA loan so they could close on their new house. If the IRS wanted the Hamptons to pay their taxes, the lien subordination would allow them to be financially able to start making payments on their tax debt. Even the Internal Revenue Code Section 6325(a)(2) provides the power to release or subordinate a lien in specific circumstances, such as when the taxpayer provides adequate security or if the subordination helps in the collection of taxes owed. However, Mr. Powell refused to file the lien subordination application and told the Hamptons that he did not want to do this. It was always about what "he" wanted to do, never what the Hamptons wanted to do.

After several months passed since the Hamptons lost their new home because of the 2019 and 2021 fraudulent tax liens denying them from closing on their new home, on 6/3/24, the IRS placed a third tax lien against the Hamptons for tax year 2022. (See Exhibit #19) On 6/27/24, the IRS placed a fourth tax lien against the Hamptons for tax year 2023. (See Exhibit #20).

The Hamptons were hurt and shocked by these two new tax liens because IRS Supervisor-Jesse Bennet and their former tax lawyer-Steve Powell had told Don and Cheryl that they were in an audit reconsideration and couldn't make payments for 2022 and 2023 taxes. Their former tax lawyer and an IRS Supervisor lied to them and conspired together to devise a devious plan to tell the Hamptons that they couldn't make any payments for 2022 and 2023 taxes. They even went to great lengths to block the Hamptons from making payments online at IRS.gov. Then they waited until their lack of payments was in the delinquent phase so they could "justify" these two new tax liens. Mr. Bennet filed these two tax liens after he drew up his letter on 4/4/24 about us not being able to make any payments.

Cheryl questioned Mr. Bennet in the lobby about tax year 2022 and tax year 2023 because the audit reconsideration was regarding tax years 2014, 2015, 2016, and 2018 only. Mr. Bennet verbally told them both in the lobby that no payments could be made on tax years 2022 and 2023 during the audit reconsideration period. So, an IRS Supervisor and their former tax lawyer lied to the Hamptons. Now Cheryl and Don know that their former tax lawyer-Steve Powell was never their advocate and that he was working for the IRS to make their case go away because they were protecting Groupon, Inc.'s tax fraud and tax evasion enterprise.

Don decided to call IRS Supervisor-Jesse Bennet to confront him about these two new tax liens. Don asked him, "Why did you file tax liens for 2022 and 2023 when you told us that while we are in an audit reconsideration, we can't make payment arrangements? You even wrote a letter explaining that to our mortgage officer. So, why did you file these two tax liens?" Mr. Bennet, after a long pause on the phone, did not give any explanation and then he cowardly hung up the phone.

Since Don didn't get anywhere with Mr. Bennet about why these tax liens were filed when he and Cheryl were told that they were in an audit reconsideration and couldn't make any payments, Don decided to go to Steve Powell's office and ask him for an explanation. Mr. Rogerson had told him that only Mr. Powell could release these tax liens, which Don thought was odd, but it made logical sense in the context that Mr. Powell had been working in concert with the IRS to protect Groupon, Inc.

When Don arrived at Mr. Powell's office, he was matter of fact and went straight to the point. Don asked him, "I want to know why Jesse Bennet filed these two tax liens against us when both you and Mr. Bennet told us that we can't make payments for 2022 and 2023 taxes while we are in an audit reconsideration. So, do you care to explain?" Mr. Powell was sitting behind his desk while Don was standing. Mr. Powell looked at Don but didn't say a word for quite some time.

When Mr. Powell did speak, it was just nonsensical lawyer gibberish. He never gave a concrete answer for why the IRS filed these two tax liens.

While Don was leaving Mr. Powell's office, he asked him again to explain why these tax liens were filed when they were told that they couldn't make payments for 2022 and 2023 taxes. Mr. Powell finally responded coherently, saying, "I will find out why this happened." Then Don asked him, "So, we are in an audit reconsideration, right?" Mr. Powell didn't give a definitive answer, and Don didn't want to keep asking the same question because he already knew that they weren't in an audit reconsideration and that their tax lawyer and the IRS had lied to him and Cheryl. They wanted to bury them in outstanding tax liens to use their coercive power to extort money from the Hamptons and to protect Groupon, Inc.

For months, Don had told Cheryl that they were never in an audit reconsideration. That's why Mr. Powell never sent them the final drafts of his audit reconsiderations for 2014, 2015, 2016, and 2018. Mr. Powell never sent our audit reconsiderations to the Independent Office of Appeals in New York. Don further explained to Cheryl, "This was a conspiracy between Mr. Powell and the IRS to lie to us that we can't make payments because we were in an audit reconsideration. They wanted to make it seem that we were refusing to pay our 2022 and 2023 taxes, then place two more tax liens on us so they could extort money from us or seize our property and any bank account." This was more than just Don's theory. There is empirical evidence to support it. The first piece of evidence was Mr. Powell's rough draft audit reconsideration documents for 2015 and 2016. Mr. Powell used these documents as props to keep the Hamptons believing that he was their advocate and was working on their behalf to have Groupon's revenue portion removed from Don's 1099-K. The second piece of evidence was Mr. Bennett's letter stating that:

The Hamptons' tax case is currently being handled by the Independent Office of Appeals. Collections cannot take any further enforcement actions until the case is resolved in appeals. The current anticipated timeline for appeal resolution is approximately 4 months to 12 months. (See Exhibit #18)

These deceitful documents were made to keep the Hamptons believing that they were in an audit reconsideration while the IRS and Mr. Powell secretly worked on creating two more fraudulent tax liens to file at the Bexar County Courthouse.

Mr. Bennet's letter constitutes tax fraud pursuant to 26 U.S. Code § 7206(1), which makes it a crime for anyone to willfully make false statements or false declarations in relation to any matter under the jurisdiction of the IRS. In this case, this IRS Supervisor intentionally provided false information with the aim of misleading or defrauding the Hamptons. This is tax fraud.

Mr. Bennet should be held accountable for tax fraud pursuant to 26 U.S. Code § 7206. Mr. Bennett should be held accountable for wire fraud pursuant to 18 U.S. Code § 1343. Wire fraud involves the use of electronic communication to carry out a fraudulent scheme, such as faxing,

emailing, or other electronic transmission. Mr. Bennet emailed his letter to the Hamptons' mortgage officer, Carrie Nagel.

## The Postal Label Tells It All

In October 2024, the Hamptons were assigned a new local IRS Revenue Office-Anthony Anderson. He tried to present himself as an IRS official who was trying to address the Hamptons' tax issues. In November 2024, Cheryl spoke with Mr. Anderson on the phone. Cheryl advised Mr. Anderson that we had amended our 2017 taxes on 10/28/24 because Groupon, Inc. put their portion of their revenue on Don's 1099-Ks and Cheryl mentioned that they want to see if the IRS in Austin, TX is going to do the right thing first before we amend the other tax years: 2014, 2015, 2016 and 2018. He told the Hamptons that he would give them until January 24, 2025, to come up with a plan to start paying their taxes.

Starting in October 2024, the Hamptons had completely given up on their former tax lawyer-Steve Powell being their advocate, as he had started disappearing again. However, Don was looking over the audit reconsideration documents and appreciated how Mr. Powell wrote that Groupon, Inc. did put their own portion of their profits on his 1099-Ks. So, the Hamptons decided to get their tax returns amended for 2014 through 2018.

The Hamptons amended their 2017 tax return first on 10/28/24 with Jackson-Hewitt. On 12/30/24, Jackson-Hewitt amended our 2018 taxes. On 12/30/24, we amended our own tax returns for 2014, 2015, 2016. Cheryl mailed the 2017 amended taxes to the IRS Office in Austin, TX on 11/8/24, Cheryl mailed 2018 amended taxes on 1/13/25 and she mailed 2014 through 2016 amended tax years on 1/22/25.

On 1/23/25, Cheryl emailed Mr. Anderson to make him aware of their current status that IRS Austin so far had no response about the Hamptons' amended taxes for 2017 and to make him also aware that her and Don had amended their taxes for 2014, 2015, 2016, 2018 on 12/30/24.

On 1/24/25, Mr. Anderson sent Cheryl an attachment from his Microsoft Word 360 with a log-in access required to view before it disappears. At the end of the long attachment was a USPS Priority Mail Label. (See Exhibit #38)

When the Hamptons first looked at the USPS Priority Mail Label, they recognized that it was a label that their former tax lawyer-Steve Powell had created. It was addressed to the Department of Treasury, Internal Revenue Service address which is the same address that was on the 2015 and 2016 audit reconsideration documents from Mr. Powell. So, for a brief moment, the Hamptons thought that Mr. Powell had mailed all of their audit reconsiderations from 3/1/24.

However, when the Hamptons looked more closely, they saw that the date on this label was 9/11/2024. Mr. Powell wrote the audit reconsiderations on 3/1/2024, and it took him until September 11, 2024, to mail these documents, six months later. It became worse when Cheryl

put the **TRACKING # 9405 5112 0620 5857 2765 24** into the USPS tracking system to see when the IRS received these audit reconsiderations, but she discovered that <u>Mr. Powell created the label only, but the package was never mailed.</u> The USPS tracking system said, *"Label Created, not yet in system. A status update is not yet available on your Priority Mail package. It will be available when the shipper provides an update or the package is given to USPS. Check back soon."* (See Exhibit #38)

This solidifies Don's theory that the audit reconsideration was a conspired effort between Mr. Powell and the IRS to deceive the Hamptons into thinking they were in an audit reconsideration and then telling them that they couldn't make payments for 2022 and 2023 taxes. The second part of their plan was to wait until their 2022 and 2023 taxes became delinquent so the IRS could file two more tax liens on the Hamptons. The IRS and Mr. Powell were working together to bury the Hamptons in tax liens and they were trying to extort money from them.

Since Mr. Powell did not send the Hamptons' audit reconsiderations to the IRS Holtsville Office in New York and he created a USPS label only to deceive Don and Cheryl. This clearly explains why they never received any response from the Independent Office of Appeals in Holtsville, New York in the mail regarding the audit reconsideration for tax years: 2014, 2015, 2016, 2018. Moreover, this clearly explains why the IRS is alleging that the Hamptons still owe outlandish taxes on money that they didn't earn.

During the period of the label discovery, Mr. Powell stopped all communication with the Hamptons. During this time last yea, The Hamptons revoked the P.O.A. of Mr. Powell. The IRS Revenue Officer-Anthony Anderson and IRS Revenue Officer-Rae Lee verbally mentioned that Mr. Powell is still showing up as the Hamptons' P.O.A. So, on 3/10/25, the Hampton decided to revoke Mr. Powell's POA again and had Mr. Powell's termination letter notarized at their bank and the Hamptons completed the tax form 2848 revoking Mr. Powell as their P.O.A. The Hamptons sent the letter and the tax form 2848 to their current Revenue Officer-Rae Lee and the IRS Office in North Carolina as well.

## Violation of Ethical Standards

Tax professionals, including tax lawyers, are bound by ethical rules and regulations. The American Bar Association (ABA) has established rules of professional conduct and violating these could result in disciplinary actions.

Rule 1.4 of the ABA Model Rules requires lawyers to keep their clients informed about the status of their matters and provide timely updates. If the lawyer falsely stated that they would file the audit reconsideration and did not, this is a violation.

Rule 8.4 of the ABA Model Rules prohibits lawyers from engaging in dishonesty, fraud, deceit, or misrepresentation. Mr. Powell knowingly and willingly misled the Hamptons intentionally. Specifically, Mr. Powell's conduct meets the criteria for mail fraud. Based on the four elements

of mail fraud and the facts in this segment, Mr. Powell's actions appear to meet the criteria for mail fraud under 18 U.S. Code § 1341: which is defined as any scheme to defraud someone or obtain money or property through false representations or promises, using the postal service or any interstate mail or delivery service to further that scheme.

There are four key elements that must be met before someone is held accountable for 18 U.S. Code § 1341:

**Scheme to Defraud:** Mr. Powell told the Hamptons that he would mail the audit reconsideration documents in March 2024, but he did not send them. Instead, he made it appear as though he did by creating a shipping label only. He created a situation in which the Hamptons believed the documents were being sent when, in fact, they were not. This fits the definition of a fraudulent scheme because he misled Don and Cheryl into thinking their audit reconsiderations were being addressed when, in reality, it was not.
**Conclusion:** This satisfies the "scheme to defraud" element of mail fraud.

**Intent to Deceive:** Mr. Powell created audit reconsideration documents that had the IRS in Holtsville, NY at the top, making it appear as though they were intended for the IRS and would be sent there. He also created a USPS shipping label directed to the IRS in Holtsville, NY giving the Hamptons the impression that the reconsideration documents were being mailed. By creating the label and using the IRS address, it appears Mr. Powell was intentionally deceiving the Hamptons into believing the documents were mailed in a timely manner, which would have stopped the IRS from taking action like placing more tax liens on them.
**Conclusion:** This meets the "intent to deceive" element of mail fraud.

**Use of the Mail System:** Mr. Powell created a USPS shipping label, which is a key part of the mail fraud definition. However, even though he created the label, he never actually mailed the documents to the IRS. The creation of the shipping label with no intention to use it for mailing the audit reconsideration documents constitutes the use of the mail system in a deceptive way.
**Conclusion:** This satisfies the "use of the mail system" element of mail fraud.

**Impact (Resulting Harm):** The Hamptons were told that they couldn't make payments on their 2022 and 2023 taxes while waiting for the audit reconsiderations, which led them to believe the audit reconsiderations was in process. Because the reconsideration documents were never mailed, the IRS placed tax liens against the Hamptons for 2022 and 2023. This had a serious financial impact, as tax liens can severely affect Don's and Cheryl's credit, property, and financial situation. Mr. Powell's actions delayed or prevented the resolution of their tax issues and directly contributed to the IRS's decision to place liens against the Hamptons.
**Conclusion:** This meets the "impact" element of mail fraud, as the fraud resulted in financial harm (tax liens) and distress.

**Legal Analysis of Mr. Powell and Mr. Bennet's Conduct**

It appears that the Hamptons' former tax lawyer-Steve Powell, and IRS Supervisor-Mr. Bennet have violated several U.S. Codes, including fraud and misrepresentation laws, for which they should face legal consequences. Here's an analysis of the potential violations:

**Wire Fraud (18 U.S. Code § 1343) - Mr. Powell and Mr. Bennet:**
 Both Mr. Powell and Mr. Bennet used electronic means (such as email or fax) to communicate the false information to the Hamptons, the IRS, or the mortgage officer (about the audit reconsiderations), which could constitute wire fraud.

This applies if they used email or fax (electronic communication) to perpetuate a fraudulent scheme, such as falsely asserting that the Hamptons were in audit reconsideration or that payments on their 2022 and 2023 taxes could not be made due to the ongoing audit reconsideration process.

Since wire fraud also includes the use of any interstate electronic communications to further a scheme to defraud, they are in violation of 18 U.S. Code § 1343.

**Conspiracy to Defraud the Government (18 U.S. Code § 371) - Mr. Powell and Mr. Bennet:**
 If Mr. Powell and Mr. Bennet conspired together to intentionally deceive the Hamptons, the IRS, and other parties (like the mortgage officer) about the audit reconsideration process and tax obligations, they are in violation of 18 U.S. Code § 371.

This law makes it a criminal act to conspire to defraud or deceive the government, its agencies, or individuals using fraudulent means. If it can be shown that their coordinated actions mislead the Hamptons about the status of their tax situation (to avoid tax payments or to avoid installment agreements), Mr. Powell and Mr. Bennet should be charged with conspiracy to defraud the government.

**Mail Fraud (18 U.S. Code § 1341) - Mr. Powell:**
Mail fraud involves using the U.S. mail (or other interstate mail carriers) to execute a scheme to defraud someone of money or property. Mr. Powell created a shipping label only for the audit reconsideration documents, which could be considered an attempt to deceive the Hamptons into believing that those documents were being mailed to the IRS in NY.

While the documents were never mailed, the creation of the label itself was part of the fraudulent scheme to give the appearance that the audit reconsideration was happening, causing the Hamptons to believe they could not pay their taxes for 2022 and 2023, leading to two more tax liens.

The violation under 18 U.S. Code § 1341 (Mail Fraud) could apply here, as Mr. Powell made a false representation (creating the shipping label only) with the intent to deceive the Hamptons about the status of their audit reconsiderations.

**False Statements and Misrepresentation (18 U.S. Code § 1001) - Mr. Bennet and Mr. Powell:**

If Mr. Bennet and Mr. Powell made false statements to the Hamptons or other parties (such as the mortgage underwriter), or they knowingly provided false information (e.g., about the audit reconsiderations), they have violated 18 U.S. Code § 1001.

This statute makes it a crime to knowingly and willfully make false statements or conceal information from the government or to others about a matter within its jurisdiction.

Mr. Bennet's letter falsely stated that an installment agreement could not be granted because the case was in an appeal status. This information was known to be false or misleading, making it a violation of 18 U.S. Code § 1001, especially since it was used to prevent the Hamptons from making payments for their 2022 and 2023 taxes.

**Abuse of Public Office (Title 26 - Tax Crimes) - Mr. Bennet:**

As an IRS Supervisor, Mr. Bennet should be held accountable for abusing his public office because he knowingly filed the tax liens against the Hamptons in June of 2024, despite being aware that they were being misled by Mr. Powell about being in an audit reconsideration.

Under Title 26 (Internal Revenue Code), there are provisions that address abuse of public office, especially if an IRS employee engages in fraudulent or deceptive practices or if they take actions that are inconsistent with the law.

If Mr. Bennet filed the liens knowing they were based on false information (because the audit reconsideration process was still pending), it is a violation of these tax-related laws or internal IRS procedures.

**Intentional Infliction of Economic Harm / Deception Leading to Harm: Mr. Powell and Mr. Bennet:**

If their fraudulent actions caused economic harm (e.g., interfering with the Hamptons' mortgage application, putting the Hamptons at risk of financial loss due to liens), this could be considered a form of intentional infliction of harm, especially if their actions were done with knowledge of the negative consequences the Hamptons would face.

Although there isn't a specific statute for "intentional harm" in this context, fraudulent intent and the impact on Don and Cheryl are relevant under broader legal principles of fraud and misrepresentation.

The Hamptons respectfully recommend that both Mr. Powell and Mr. Bennet be held fully accountable for their fraudulent and illegal actions that have caused significant financial harm and distress to them. As a result of their deceitful conduct, which includes creating and presenting fraudulent documents (such as the USPS shipping label) to mislead the Hamptons into believing they were in an audit reconsideration, and filing wrongful tax liens without any

legitimate basis, the Hamptons have suffered severe economic consequences. The actions of Mr. Powell and Mr. Bennet clearly violate multiple federal statutes, including Mail Fraud (18 U.S. Code § 1341), Wire Fraud (18 U.S. Code § 1343), False Statements and Misrepresentation (18 U.S. Code § 1001), Conspiracy to Defraud the Government (18 U.S. Code § 371), and Fraud and False Statements (26 U.S. Code § 7206).

Furthermore, Mr. Bennet's abuse of his public office under Title 26 – Tax Crimes has compounded the harm inflicted upon the Hamptons. These violations were intended to deceive the Hamptons and have resulted in intentional infliction of economic harm, including the wrongful placement of liens and obstruction of their ability to move forward with significant life events such as buying a new home purchase, securing a mortgage, refinancing an old home and Don's loss of two new medical massage therapist contractor jobs. Given the gravity of these violations and the ongoing harm caused, the Hamptons want all of four of the tax liens lifted immediately. Mr. Powell and Mr. Bennet should be held accountable for their egregious actions.

### Legal Analysis of the Audit Reconsideration Ruse: Misconduct by Mr. Powell and Mr. Bennet

At the heart of this matter lies a disturbing and deliberate scheme orchestrated by tax attorney-Steve Powell and IRS Supervisor-Jesse Bennet, in which they misled Don and Cheryl Hampton into believing that their prior tax years were undergoing audit reconsideration—effectively blocking their ability to make timely payments on taxes for 2022 and 2023. This deception was not only unethical but, under established federal law, appears to rise to the level of criminal misconduct and fraud against both taxpayers and the United States government.

### Fraudulent Construct of the "Audit Reconsiderations" as a Tool of Deception

Former Tax Attorney-Steve Powell was to submit audit reconsideration documents related to tax years 2014, 2015, 2016, and 2018. In support of this illusion, Mr. Powell created a USPS shipping label addressed to the IRS Appeals Office in Holtsville, New York. However, with research, USPS tracking later revealed that the package was never mailed. This constitutes a deliberate act of deception—a fabricated act designed to make the Hamptons believe they were in a legitimate IRS audit reconsideration proceeding when in fact no such process was ever initiated.

Mr. Powell's creation of the USPS shipping label, unaccompanied by actual mailing, qualifies as "use of the mails" under federal mail fraud law (18 U.S.C. § 1341), even if the mail was never delivered. Courts have consistently held that the mere act of placing something into the postal system or creating documentation to appear qualifies under the statute.

**Obstruction of Payment Rights and Strategic Delinquency**

Once the Hamptons were falsely led to believe that audit reconsideration was underway, they were informed—verbally and through implication—that payments on their 2022 and 2023 tax obligations could not be made while reconsideration was in progress. In truth, there exists no IRS rule prohibiting taxpayers from making voluntary payments during an audit reconsideration process. This misinformation served one purpose: to delay or prevent the Hamptons from paying their taxes, thereby creating a situation of delinquency.

Then, in June 2024, Mr. Bennet, with full knowledge of the false audit reconsideration narrative, filed tax liens in Bexar County for tax years 2022 and 2023. These liens were fraudulent in nature, as they were predicated upon tax debt that was intentionally left unresolved by blocking the Hamptons' ability to pay. By doing so, Mr. Bennet weaponized IRS lien authority to punish the Hamptons based on engineered noncompliance.

**Conspiracy Between a Government Official and a Private Lawyer**

The most troubling aspect of this case is the apparent collusion between Mr. Powell and IRS Supervisor-Mr. Bennet. If proven, this represents a conspiracy to defraud the government and taxpayers under 18 U.S.C. § 371. By working in tandem to both simulate compliance (via audit reconsideration documents) and deny the taxpayer the ability to resolve tax liabilities, they orchestrated a fraudulent scheme that harmed the Hamptons both economically and procedurally.

This behavior is not just an ethical lapse—it is a betrayal of public trust and a breach of both civil and criminal law. When a public official abuses their authority in coordination with a private actor to defraud a taxpayer, it constitutes misconduct with serious legal implications under statutes such as:

- **Mail Fraud** – 18 U.S.C. § 1341
- **Wire Fraud** – 18 U.S.C. § 1343
- **Conspiracy to Defraud the Government** – 18 U.S.C. § 371
- **False Statements** – 18 U.S.C. § 1001
- **Fraud and False Statements on Tax Returns** – 26 U.S.C. § 7206

## Why DOJ's Request for an Extension Should Be Denied

The Department of Justice attorney-Ms. Smith has requested a 30-day extension to respond to the Hamptons' complaint. This request should be firmly denied due to the government's long-standing and demonstrable pattern of delay, deception, and deliberate obstruction—of which this Mr. Powell and Mr. Bennet scheme is a central example. The Hamptons have been systematically misled, denied the ability to resolve their tax obligations, and financially harmed by fraudulent IRS liens based on orchestrated delinquency.

To grant an extension would be to enable continued delay by a party (the IRS and its legal counsel) that has already abused by administrative delay mechanisms and operated in bad faith for multiple years.

## Supporting Case Law

1. **United States v. Maze, 414 U.S. 395 (1974)**
   The Court ruled that mail fraud encompasses schemes in which the use of the postal service is part of the execution of a fraudulent plan, even if the mailing itself was not essential to the fraud's success.

2. **United States v. Pearlstein, 576 F.2d 531 (3d Cir. 1978)**
   Clarified that the creation of fraudulent mailing materials (e.g., shipping labels, invoices) to feign compliance qualifies under 18 U.S.C. § 1341 as mail fraud.

3. **United States v. Hickey, 580 F.3d 922 (9th Cir. 2009)**
   Demonstrated that a government agent can be criminally liable for wire fraud when working in coordination with private individuals to defraud third parties or the government.

4. **Dennis v. United States, 384 U.S. 855 (1966)**
   Established that making false representations to the government, even indirectly, is sufficient to violate 18 U.S.C. § 1001, especially when those misrepresentations are used to obstruct administrative functions.

5. **United States v. Klein, 247 F.2d 908 (2d Cir. 1957)**
   A seminal conspiracy case involving tax fraud, holding that a conspiracy to impair the lawful functions of the IRS constitutes a violation of 18 U.S.C. § 371.

## The Immediate Removal of 2022 and 2023 Tax Liens

Given the fraudulent nature of the liens imposed by Mr. Bennet in June 2024 for tax years 2022 and 2023, it is imperative that these liens be immediately removed. They were not the result of taxpayer noncompliance, but rather the product of a deliberate and coordinated effort to obstruct the Hamptons' ability to fulfill their tax responsibilities.

The false assertion that the Hamptons could not make payments due to audit reconsideration was manufactured by Mr. Powell and knowingly leveraged by Mr. Bennet to file tax liens based on engineered delinquency. These liens have caused irreparable financial harm—damaging the Hamptons' credit, impeding their ability to purchase a home, refinance a home and resulting in the loss of job opportunities.

Under the IRS's own procedures, liens filed in error or based on false premises can and should be released immediately. The continued existence of these liens constitutes ongoing harm, violates due process, and perpetuates the fraudulent scheme exposed in this filing.

## Conclusion:

The evidence presented in this segment shows that the IRS, through the coordinated and deceitful acts of IRS Supervisor-Mr. Bennet and former tax attorney-Mr. Powell, conspired to defraud and financially damage the Hamptons under the guise of audit reconsiderations. By misleading them into inaction and then filing unjustified tax liens, they caused irreparable harm blocking a mortgage approval for a home, a refinance of a home, destroying credit, and undermining employment opportunities.

This orchestrated fraud undermines not only taxpayer trust but the integrity of the IRS as a government institution. It directly supports the Hamptons' claim that further delay—such as that requested by DOJ Attorney-Mary Beth Smith would only enable the IRS to perpetuate a cover-up of these abuses.

The Court should **not** reward any extension. Instead, we are requesting that the Court take action to expose and rectify this pattern of misconduct. The Hamptons are entitled to swift justice, immediate relief from fraudulent tax liens, and full accountability imposed upon both Mr. Powell and Mr. Bennet under federal law.

## Psycho-Social Analysis of the IRS and DOJ Counsel's Interaction:

The Plaintiffs respectfully submit that the Department of Justice's request for a 30-day extension—citing a continued lack of information from the IRS since March 31, 2025—reveals more than a simple administrative delay. It reflects a deeper psycho-social dysfunction within the relationship between the IRS and its legal counsel, which has direct implications for the fairness and efficiency of this litigation.

In her communication, DOJ Trial Attorney-Mary Beth Smith stated:

"I am still waiting on information and documents from the IRS."

This statement, while procedural on its face, suggests a breakdown in **inter-agency communication**, **role clarity**, and **institutional responsiveness**. From a psycho-social perspective, several key dynamics are at play:

### 1. Organizational Disengagement and Internal Friction

The IRS's failure to provide timely documentation to its own legal representative over a two-month period may indicate **internal conflict**, **bureaucratic inertia**, or **avoidance behavior**. This could stem from discomfort with the facts of the case—particularly now that Groupon, Inc. has DEFAULTED, effectively validating the Plaintiffs' claims of fraudulent 1099-K reporting to the IRS for tax years: 2014 through 2018.

### 2. Role Ambiguity and Legal Hesitation

The DOJ counsel's reliance on vague language ("still waiting") and her passive tone may reflect **role ambiguity**—a psychological state where an individual is uncertain about their responsibilities or lacks the authority to act decisively. This is especially concerning in a case involving federal tax enforcement, where clarity and accountability are paramount.

### 3. Defensive Posturing and Institutional Anxiety

The IRS's silence may also be a form of **institutional defensiveness**—a psychological response to a perceived threat or exposure. With Groupon, Inc.'s default filed on 5/14/25, the IRS may be internally grappling with the implications of having relied on fraudulent third-party data to assess and enforce tax liabilities. This could explain the agency's reluctance to provide documents that appear to further validate the Plaintiffs' claims.

### 4. Impact on the Plaintiffs

This dysfunction has real-world consequences. The Hamptons have endured years of financial and emotional distress due to the IRS's reliance on fraudulent 1099-Ks. The continued delay—now compounded by inter-agency misalignment—only deepens that harm. The Plaintiffs are not merely navigating a legal dispute; they are confronting a system that appears disjointed, unresponsive, and unwilling to self-correct.

## Psychological Analysis: Internal Conflict and Institutional Self-Preservation Within the IRS:

From a purely psychological standpoint, the IRS's prolonged failure to provide its own legal counsel with the necessary documents and information may reflect a deeper **internal conflict**, not just a procedural delay. The agency may be experiencing a form of **cognitive dissonance**: a psychological state in which individuals or institutions struggle to reconcile their actions with their self-image or ethical standards.

### 1. Fear of Accountability and Exposure

The IRS is likely aware that if it provides the requested documents and allows the Plaintiffs' amended tax returns for 2014 through 2018 to be processed, the truth will become undeniable: the Hamptons owe only **$940**, not the vastly inflated amount previously claimed. This revelation would not only validate the Plaintiffs' allegations of tax fraud and misreporting by Groupon, Inc, but also expose the IRS to potential claims of:

- **Negligent enforcement**
- **Wrongful lien imposition**
- **Complicity in third-party tax fraud**
- **Extortionate collection practices**

This fear of exposure may be driving the agency's reluctance to cooperate even with its own legal team.

**2. Institutional Ego and Resistance to Accountability**

The IRS, as a powerful federal agency, is not accustomed to being placed in a defensive posture. Its institutional identity is rooted in **authority, enforcement, and compliance**. Being forced to answer for its actions in federal court—especially in a case where a co-defendant has already defaulted—may trigger a psychological response of **institutional ego defense**. This can manifest as:

- **Deliberate withholding of information**
- **Passive resistance to legal processes**
- **Minimization of internal errors**

**3. Self-Preservation Over Justice**

The agency may be prioritizing **self-preservation** over transparency. If internal documents confirm that IRS employees knowingly relied on fraudulent 1099-Ks, those individuals could face disciplinary action or even legal consequences. This creates a powerful incentive to delay, deflect, or deny rather than disclose.

**4. This Should Not Justify Further Delay**

While these psychological and institutional dynamics may explain the IRS's behavior, they do **not justify** a 30-day extension. The Plaintiffs have already endured years of harm due to the IRS's reliance on fraudulent documents. Further delay only serves to protect the agency from accountability while prolonging the Plaintiffs' suffering.

The Court should **not** reward institutional avoidance with additional time. Instead, it should require the IRS to respond promptly and transparently, in accordance with its legal and ethical obligations.

## Conclusion: Denial of Extension Is Warranted to Prevent Further Obstruction and Injustice

Given the extensive and well-documented record spanning over five years, it is clear that the Defendants—specifically the IRS and its agents, with the complicity of former counsel-Mr. Powell—have engaged in a persistent pattern of delay, fraud, obstruction, and abuse of power. From the fabrication of audit reconsiderations and a USPS label created only, to the wrongful filing of tax liens and fraudulent manipulation of the Hamptons' IRS accounts, the government has shown not just neglect but willful misconduct.

This is not a routine case where an extension serves justice. Rather, granting the DOJ more time would directly reward a federal agency and its counsel for intentionally deceiving the Plaintiffs and this Court. The DOJ has had more than ample opportunity—indeed, **years**—to investigate its

own records and the gross misconduct of its agents. The request for more time now, after failing to act within the initial 60-day response window, shows a continuing tactic of calculating delay and evasion.

The Hamptons have suffered economic harm, reputational damage, and emotional distress as a direct result of this pattern of fraud and deception—harm that includes wrongful tax liens, denied homeownership opportunity, the loss a home refinance, further employment contracts for Don, illegal interference with their tax records and legal rights. Further delay only prolongs this injury.

Plaintiffs respectfully request that this Court **DENY the Defendant's Motion for a 30-Day Extension**, and proceed without further delay to address the Plaintiffs' claims based on the true merits. The record is sufficient. The harm is ongoing. The misconduct is egregious. Justice delayed would be justice denied.


Respectfully Submitted,

_____  5/29/25

Don A. Hampton, M.A., B.S., L.M.T.


_____  5/29/25

Cheryl A. Hampton, M.B.A., B.S., A.A.

**IRS** Department of the Treasury
Internal Revenue Service

AUSTIN  TX  73301-0021

In reply refer to: 0684404641
Mar. 07, 2019  LTR 2626C   0
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  201512 30       H
                              00023821
BODC: SB

DON & CHERYL A HAMPTON
314 ADDAX DR
SAN ANTONIO  TX  78213-3929

*Exhibit#2A*
*(pg 1 of 2)*

039524

    Taxpayer identification number: 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
                    Tax period: Dec. 31, 2015
                     Tax form: 1040

Dear Taxpayer:

Thank you for your reply dated Aug. 16, 2018, to our inquiry about
changes to items on your tax return.

Your reply indicates Groupon Inc reported a larger amount than you
received in 2015.  The information submitted appears to only explain
what was included in the total from 2014 through 2017.  It does not
indicate there were any errors for tax year 2015; therefore, we are
unable to use the information submitted.  You might only need to amend
the Schedule C expenses.

If you don't agree with the income reported to us by the payers
listed below, ask them for a corrected income statement or written
verification and send it to us. The statement should show the correct
amount of income they paid to you for the tax period listed above.
When we receive the corrected statement or the payer's written
verification from you, we'll correct our proposed changes. If the
payer won't correct the document or provide written verification,
tell us and explain why the payer's information is incorrect. We can't
correct our proposed changes without this information.

Payer's name: GROUPON INC

Address:       600 W CHICAGO AVE
               CHICAGO, IL 60654

If you have questions, you can call T. Tole at
800-829-8310 between 7:00 a.m. and 8:00 p.m. CST or fax
us at 877-477-0583.

If you prefer, you can write to the address at the top of the first
page of this letter.

When you write, include a copy of this letter, and provide your
telephone number and the hours we can reach you in the spaces below.

Telephone number ( )_____ Hours _____

```
                                                    0684404641
                               Mar. 07, 2019  LTR 2626C    0
                               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  201512 30        H
                                                    00023822
```

DON & CHERYL A HAMPTON
314 ADDAX DR
SAN ANTONIO  TX  78213-3929

*Exhibit #2A*
*(pg 2 of 2)*

Keep a copy of this letter for your records.

Thank you for your cooperation.


A copy of this letter and any referenced enclosures have been
forwarded to your authorized representative(s).


                          Sincerely yours,



                          *J. Tole*

                     Timothy Tole
                     Manager,AUR Operation


Enclosures:
Copy of this letter
Envelope

*Exhibit #18*



**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**WASHINGTON, DC 20224**

Internal Revenue Service
Received

APR 0 4 2025

SB/SE Collections - Group 18
San Antonio, TX 78229

**SMALL BUSINESS / SELF-EMPLOYED DIVISION**

MEMORANDUM FOR DON & CHERYL HAMPTON, 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

FROM:    JESSE BENNET

SUBJECT:    INSTALLMENT AGREEMENT

1. The Hampton's tax case is currently being handled by the Independent Office of Appeals.
2. Collections cannot take any further enforcement actions until the case is resolved in appeals.  The current anticipated timeline for appeals resolution is approximately 4 months to 12 months.
3. Due to the case being currently worked; an installment agreement cannot be granted until resolution.  Installment agreements require all periods to be included; this action cannot take place until the appeal is resolved, and the case is returned to collections.



| 1872 | Department of the Treasury - Internal Revenue Service | |
|---|---|---|
| **Form 668 (Y)(c)** (Rev. February 2004) | **Notice of Federal Tax Lien** *Exhibit #19* | |

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #5 (800) 913-6050 | Serial Number 494895624 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

- This Notice of Federal Tax Lien has been filed as a matter of public record.
- IRS will continue to charge penalty and interest until you satisfy the amount you owe.
- Contact the Area Office Collection Function for information on the amount you must pay before we can release this lien.
- See the back of this page for an explanation of your Administrative Appeal rights.

Name of Taxpayer   CHERYL A HAMPTON

Residence   314 ADDAX DR
SAN ANTONIO, TX 78213-3929

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2022 | XXX-XX-5099 | 05/06/2024 | 06/05/2034 | 17295.37 |

| Place of Filing COUNTY CLERK BEXAR COUNTY SAN ANTONIO, TX 78205 | Total | 17295.37 |
|---|---|---|

This notice was prepared and signed at _____NASHVILLE, TN_____ , on this,

the __03rd__ day of ___June_____ , ___2024__ .

| Signature *[signature]* for JESSE BENNETT | Title REVENUE OFFICER (210) 841-2419    25-08-1813 |
|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgement is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

CAT. NO 60025X
Form **668 (Y)(c)** (Rev. 02-04)

**Form 668 (Y)(c)**
(Rev. February 2004)

1872

Department of the Treasury - Internal Revenue Service

**Notice of Federal Tax Lien**    *Exhibit #20*

| Area: | Serial Number | For Optional Use by Recording Office |
|---|---|---|
| SMALL BUSINESS/SELF EMPLOYED AREA #5 (800) 913-6050 | 496428524 | • This Notice of Federal Tax Lien has been filed as a matter of public record. |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

• IRS will continue to charge penalty and interest until you satisfy the amount you owe.

Name of Taxpayer  DON & CHERYL HAMPTON

• Contact the Area Office Collection Function for information on the amount you must pay before we can release this lien.

Residence  314 ADDAX DR
SAN ANTONIO, TX 78213-3929

• See the back of this page for an explanation of your Administrative Appeal rights.

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2023 | XXX-XX-5099 | 06/03/2024 | 07/03/2034 | 14748.29 |

| Place of Filing | | |
|---|---|---|
| COUNTY CLERK BEXAR COUNTY SAN ANTONIO, TX 78205 | Total | 14748.29 |

This notice was prepared and signed at _____ NASHVILLE, TN _____ , on this,

the __27th__ day of __June__ , __2024__ .

| Signature | Title |
|---|---|
| *Liza Dean Curry* for JESSE BENNET | REVENUE OFFICER (210) 841-2419    25-08-1813 |

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

**Part 3 - Taxpayer's Copy**

CAT. NO 60025X
Form **668 (Y)(c)** (Rev. 02-04)

*Exhibit #38 (pg 1 of 2)*

32



## USPS PRIORITY MAIL ®

Steve Powell                                          0003
Powell Law Firm
2170 Buckthorne Pl., Ste 300
The Woodlands TX 77380                    B050

SHIP
TO:      DEPARTMENT OF THE TREASURY
         Internal Revenue Service
         PO BOX 9012
         HOLTSVILLE NY 11742-9012

### USPS TRACKING #



9405 5112 0620 5857 2765 24

# USPS Tracking®

*Exhibit #38 (pg 2 of 2)*

**Remove X**

**Tracking Number:**

## 9405511206205857276524

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

### Label Created, not yet in system

A status update is not yet available on your Priority Mail® package. It will be available when the shipper provides an update or the package is given to USPS. Check back soon.

Sign up for Informed Delivery® (https://informeddelivery.usps.com/box/pages/intro/start.action) to receive notifications for packages addressed to you.

If you'd like to see the tracking information for an item sent in the past, go to USPS Tracking Plus® Archives.  .

Feedback

**USPS Tracking Plus™ Archives**                                    ˅

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs